Parker, J.
I have some doubt whether Carson’s right in the trees was not a mere chose in action, and therefore not assignable; but that doubt is not so strong as to induce me to dissent from the clear opinion of the other judges who heard the cause.
Cabell, J.
Our lamented brother Brockenbrough, who heard the argument, had prepared an opinion in which I entirely concur. It is in these words—
*551 “ This case seems to me to be settled by both resolutions in Palmer’s case, 5 Co. 24 b. and Croke Eliz. 819. where it is reported by the name of Basset v. Maynard.
- “ In that case, sir Thomas Palmer had sold to Corn-ford, 600 cords of wood standing in a forest, but the vendor had the election to specify them. It was resolved that ‘ Cornford had an interest which be might assign over, and not a thing in action, or possibility.’ Why ? Because, say the court, * if sir Thomas did not assign them on request, Cornford the vendee might take them without assignment, for the grantor shall not be allowed by his act or default to derogate from his own grant.’ That is to say, the right of the grantee, on the failure of the grantor to make the election, is precisely that which the grantee would have had, if the election had been cast on him in the first instance. And what is that right ? The court answer, ‘ Then it follows that he had an interest which he might assign over;’ and as authority for this, reference is made to 44 Edw. 3. 43 b.
“ This position is as strongly reported in Cro. Eliz. where it is stated to be the opinion of the whole court. ‘ And here he (Cornford) hath an interest before the assignment made by sir Thomas Palmer, insomuch that if sir Thomas Palmer will not assign it in convenient time, he himself might take them: and therefore he may assign this interest, as 44 Edw. 3. pi. 43. is.’
“ I think, then, that the first resolution proves that Carson had a right to assign to M’Coy (or, to use the language of the court in Cro. Eliz. he had the right to nominate M’Coy as the person who should elect) and that such assignee had the same right to elect, and to specify the particular trees, that Carson himself had when he made the purchase.
“ In corroboration of this position that the grantee of cords of wood standing in a forest has an interest in *552 them assignable before election made, I refer to Stampe v. Clinton alias Liford, 2 Roll. Rep. 99.
“The second resolution in Palmer’s case also sup- . \ ports, I think, the right of M’Coy the assignee in this case to recover the trees. That resolution proceeds on the hypothesis that the assignment by the vendee Corn-ford to Basset the plaintiff was void. Yet, say the court, ‘ as Basset felled them, he had possession, and that gives him a good title against the defendant and every stranger.’ The defendant in that case (Maynard) was a subsequent vendee of sir Thomas, of such a quantity of wood as would make 4000 cords, at the vendee’s election; and, say the court, ‘the defendant cannot take that which- is cut down, but ought to make bis grant good out of that which is growing, and the possession of Basset of that which he felled sufficetb to protect him.’
“Now here, if M’Coy the assignee had felled the trees, his possession (even if the assignment be void) would be good against a subsequent purchaser, who would have been compelled to make his purchase good out of the rest of-the wood. How much stronger, then, would have been the right of M’Coy against the vendor, who had parted with the possession of the trees, and received full and valuable consideration for them.
“Nor can I see that the fact of the trees being only marked, and not felled, makes any difference, particularly as to the vendor. The marking of trees is a mode of taking possession of them, and, as such, is an indicium of property. It reduced to certainty and made specific the trees which were sold, as much as if they were felled. Nor was it necessary to give notice to the vendor that the trees were to be marked. The contract did not require notice, and the vendor was bound to let the vendee have such trees as would best suit his purpose.”
*553 M’Coy V. Herbert.
Tucker, P.
The timber sold in this case was, even while yet standing, a chattel in the estimation of law, according to the current of authority. 1 Ld. Raym. 182. Parker v. Staniland, 11 East 362. Warwick v. Bruce, 2 Mau. & Selw. 205. Toller on Executors 195. 4 Co. Rep. 62. 3 Bac. Abr. 64. By the agreement it appears that Herbert actually sold 50 white oaks of Carson’s choice, and did not merely contract to sell them. By this sale a title passed to Carson to 50 white oaks, and although until election he could maintain no action for any in particular, yet upon making election his right was consummate. The title passed by the sale; the election enured merely to identify that which passed by the grant. Where, indeed, election creates the interest, nothing passes till election. But here the sale by Herbert, and the payment of the money, created the interest, and the election was only necessary to ascertain the property. If I give one of two horses at A.’s election, there the election creates the interest, and nothing passes till it is made. But when I sell for a consideration one of two horses at A.’s election, if the sale does not give a perfect title, it passes an interest at least,; and the election does not create it. In the sale of real j estate, nothing is more familiar. I sell 20 acres of myl land, out of a tract of 100 acres, to be laid off at the election of the vendee. His title is immediate, and his| election is only necessary to set apart his 20 acres in 1 severalty; and this may be done without deed, which \ shews that it is not the election which creates the interest. Such right moreover is assignable, and the assignment would unquestionably pass the title, and the election also, as incident thereto. So in relation to personalty. A title to it wdll pass by deed, even without possession. F. N. B. 140. Perkins 30. 1 Roll. Rep. 61. 2 Barn. & Ald. 551. 1 Bac. Abr. 527. tit. Bills of Sale. And though, until election, the grantee of one of several things can maintain no action, because the identity of *554 the thing claimed is not ascertained, yet his right to have the property is perfect, and, if undisputed, is of course transferrible. It is not, I conceive, a chose in action, the seller being as to him a trustee and not an adverse holder; and indeed, in this case, Carson was in possession until after the election.
In Palmer's case, 5 Co. 24 b. the right to select the trees was in the grantor sir Thomas Palmer, and it was contended that until selection of the identical trees, the grantee had no vested interest which he could assign. But the court held otherwise, adjudging that he had an interest before the assignment of the timber by sir Thomas, insomuch that if sir Thomas had not assigned in convenient time, he himself might take them, and therefore he might assign his interest: that is to say, the default of sir Thomas devolved the election on his vendee, and that right of election gave such an interest as was assignable. This seems to me good sense and plain reason; and the case has accordingly been approved by the judges of our own days; 3 Wilson 334. If, then, the devolving of the right of election on the grantee by the grantor’s default, gave him such an interest as was capable of assignment carrying the election with it, it is not perceived why the devolving of the election on him by the original sale should not have the same effect. I am therefore of opinion that Carson had an assignable interest, even before election; that the right of election passed to M'Coy; and that by his election, by marking the trees, his rights became consummate, and his action of trover was well maintained.
It is said, however, that no title passes till election, where the party is to elect between two things. This doctrine seems not very reasonable, where I have paid my money for the thing purchased, and have the right of election in myself. But admit it. After the assignment to M'Coy, if the property did not at once pass, the authority to elect nevertheless passed; for its ef *555 Feet was to give, as far as it could give, all the rights of . , , , the assignor. Now, even though the property could not pass, because it was not then identified, yet the right to have it when identified did pass, and with it the right to select the trees. What then was the effect of the selection ? To identify the trees, and to render certain what had been sold by Herbert. At the moment of election, the title passed out of Herbert, if it had not done so before. Into whom did it pass ? Admit that it passed into Carson. At the same instant, uno jlatu, his assignment to M’ Coy enured to vest it in him. All this occurred before the trees were felled ; and M’ Coy’s right was thus consummate before the wrong done. The trees were his, and he had a right to sue for their value. Carson had no such right. This is obviously the justice of the case, and, as I verily think, the law of it also. I cannot concur in the refinement by which the just rights of the plaintiff have been defeated, and the wrongdoer protected from retribution for his gross violation of his own contract.
The want of notice of election has been objected ; but it forms no just objection. M’Coy was not bound to give notice. After the grant, Herbert had no right to cut the trees without first calling on Carson or his assignee to elect. If he had done so, he would have received notice of the election; and the parties having agreed the fact that the trees were selected and marked by M’Coy, I think he was entitled to a judgment upon the verdict.
I am therefore of opinion to reverse the judgment of the circuit court, and enter judgment for the plaintiff
Judgment of circuit court reversed, and judgment, entered for plaintiff" in error.